Hevitts, J.,
dissenting. It is a clear principle of law, as well as of natural justice, that every party litigant is entitled to have his cause tried by an impartial and disinterested court and jury ; by men, who are omni exceptione ma/jores. So strong and irresistible is this principle, that it was declared in Lord Hobart’s time, “ That an act of Parliament against natural justice, as to make a man a judge in his own cause, is void in itself for Jura naturae sunt immutabilia,; for they are Leges Legum.” Hobart’s R. 87. And Lord Holt refers to a case, where the Mayor of Hertford was laid by the heels, for sitting in a cause wherein *470 he himself was lessor of the plaintiff; though, by the charter, he was the sole judge of the court where the cause could be tried. Salk. 201, 396.
This principle of the common law is so consistent with our sense of right and propriety, that it would seem to require no confirmation by legislative enactment; yet from some cause our own legislature has deemed it proper to enact, “That no justice or judge, who shall be interested in the event of a cause depending in court, shall sit in judgment upon the trial or argument of any point in controversy in any such cause.” Elm. Dig. 263.
This statute would seem to define with sufficient clearness the boundary of judicial competency, so far as the question of interest may be involved; yet a difficulty arises, as to the mode of determining that question. If presented upon the trial, it must be submitted to the decision of the very person against whom the objection is urged. Neither the common law, nor our statute has prescribed any other mode, in which the question of interest in a judge is to be settled. As this case however does not depend wholly upon the challenge made to the judge upon the trial, I do not feel called upon to express any decided opinion either as to the form or substance of the challenge, or the judgment which was pronounced upon it.
I proceed therefore to consider the demurrers to the challenges to the array, and to the individual jurors. The same reasons, which may be urged against the sheriff who returns, are equally operative against the jurors, who may be returned for the trial of a cause. And very many exceptions may be urged to both, that are in no wise applicable to witnesses. For the faithful and satisfactory administration of justice, the sheriff and jurors are to be not only above all exception, but above all suspicion of bias or prejudice. No man will rest content with a verdict, if he has the slightest ground to suspect, that it is founded in ill will or uudue favor and partiality. It would be impossible to enumerate every cause, which will amount to a principal challenge, either to the sheriff or jurors. Among them however it may b'e proper to mention, that if they or either of them have an interest in the question to be tried, as if they have land depending upon the same title, they are incompetent and it is a ground for a prin *471 cipal challenge. Or, if either of them have an action of debt depending against him by either party to the suit, it is likewise a ground for such challenge; Coke Lit. 156. So, if they be of kin to either of the parties, Id. 57. So, if they are liable to the distress of either party; or interested in the cause; or have declared their opinion; or acted as arbitrator, or served before as a juror in the same matter; or are liable to contribute to the expenses of the suit. In all such cases they are subject to a principal challenge. Bul. 306, 307; Salk. 648. As all these causes carry with them prima facie marks of suspicion, either of malice or favor, they constitute grounds of principal challenge, 3 Blac: Com: 363. And that able commentator remarks, “ we cannot but admire how scrupulously delicate, and impartially just the law of England approves itself, in the constitution and frame of a tribunal thus excellently contrived, for the test and investigation of truth ; in its caution against all partiality and bias, by quashing the whole panel, if the officer returning it, is suspected to be other than indifferent; and in repelling particular jurors, if probable cause be shown of malice or favor to either party.” 3 Blac. 367. In Hesketh v. Braddock, 3 Bur. 1847, Lord Mansfield said, “There was no principle in the law better settled, than that any degree of interest, even the smallest, in the question depending, is a decisive objection to a witness, and much more to a juror and the officer by whom the jury is returned. That the law has so watchful an eye to the pure and unbiased administration of justice, that it will never trust the passions of mankind in the decision of any matter of right. That the minuteness of interest will not relax the objection, for degrees of influence cannot be measured; no line can be drawn, but that of total exclusion of all degrees whatever.”
Whatever may be the present rule, touching the competency of a witness, who may have an interest in the question, the rule laid down, in the case last cited, has never been relaxed in regard to the sheriff or jurors. Any interest in them, whether it be an interest in the question or in the event of the suit, whether it be a direct and certain, or a remote and contingent interest will equally exclude them upon a principal challenge from any participation in the trial or decision of a cause. Such I take to *472 be the general and well established principle of law, and entirely consistent with the principles of natural justice and common sense. It remains then to inquire whether the sheriff and jurors in the case before us, had such an interest; or whether they are within any exception to such rule.
The Board of Freeholders, who are the plaintiffs below, are the trustees of the inhabitants of the county. By law they are erected a body politic and corporate, with power to acquire, purchase, have and hold lands, goods and chattels, in trust to and for the use of their respective counties. They have power to vote, grant, assess, and raise money for the use of the inhabitants under certain specified restrictions and regulations; and when raised, to expend, and disburse them, either in payment of debts due from their county, or in the promotion of such objects and purposes of a public nature, as are designated by law, and in which the taxable inhabitants of the county have, or are presumed to have, a common interest. All the property real or personal, which may be acquired and held by the corporation, is held in trust for the inhabitants, and for their benefit. The plaintiffs in this suit claim from, the defendant a large sum of money; and if recovered, it will be held or appropriated- by them for the benefit of their constituents; and if they fail in such recovery the costs of the suit must be paid out of the common purse. If that is exhausted, new exactions must be made upon the taxable inhabitants, to meet the demand. Can it be said therefore, that the inhabitants of the county of Essex have no interest in this suit ? I think not. They have an interest, in proportion to the amount of money involved in the suit; and it is not merely a remote and uncertain interest, but a direct and certain one. It is no answer to say, that they may sell their estate, and remove from the county, before they may be called upon by law to make their contribution. If the effect of a judgment was only a probability of future taxation, that effect operates in presentí by appreciating or depreciating the value of their estates. The interest may be small, it is true, but it nevertheless exists, and in proportion to the property held by each inhabitant. Suppose the trustees of an incorporated religious society were to bring a suit against their treasurer, to recover the fund held by him, to de *473 fray the support of their minister, and repair the church or parsonage ; would it be pretended that a member of the society, whose property was liable to contribute to make up the deficiency in case of a failure to recover, would be legally competent to return the jury, or to serve as a juror in thetrial of thecause? And the case before us does not differ from that in principle.
The books to which I have had access, abundantly support the view, I have taken of this question.
Where a parson of a parish is a party to a suit, and the right of the church cometh in debate, a parishioner is not a good juror. It is cause of principal challenge, Coke Lit. 157. If the issue concern the city or corporation, which makes the panel, and any of their body go on the jury or any of kin to them, it is a good cause of challenge; Hobart’s R. 37. If a body politic or corporate bring an action that concerns their body politic, and a juror be of kindred to any of that body, although the body politic can have no kindred, yet for that those bodies consist of natural persons, it is a good cause of principal challenge. Coke Lit. 157; Woods Inst. 614; 1st. Saun. R. 344. So in Stryker v. Trumbull, et al, 3 Caine’s R. 103, Kent said, “ That a town contributing to the support of a suit is good ground for allowing a foreign jury.” In Wood v. Stoddard, 2 John. R. 195, where half the penalty sued for, which was less than §100, went to the use of the poor of the town, and jurors from that town were summoned to try the cause, and rendered a verdict for the plaintiff, the court said in reviewing the case, “ that the relaxation of the rule as to questions of interest, has never been extended to jurors;” and it reversed the judgment. In Hawkes and others v. Inhabitants of Kennebeck, 7th Mass. R. 461, it was held “ that an action against the inhabitants of that county could not be sued before the common pleas of the county, for every judge and every juror as interested in the event of the suit, might legally refuse to serve.”
I know of no case of authority where a contrary doctrine has been clearly held. The case of The Board of Justices of Burlington v. Fenimore, collector, Coxe R. 190, was decided before the passage of the act to promote the impartial administration of justice, if it can be said to amount to a judicial decision at all. It would seem from the report of that case that the Chief Justice, *474 who was an inhabitant of the county, himself raised the objection ; but his associates inclined to the opinion, that his interest was too remote and contingent to exclude him. It does not appear that the question was seriously raised by the parties, or argued by counsel. I attach but little importance to the case; and I can find no other case, where it was ever held, that even a remote and contingent interest would not disqualify a juror. A witness was formerly held to be incompetent to give testimony in a suit, wherein his own county or parish was a party. Sayer’s R. 179. But, in regard to witnesses, the rule was greatly relaxed before the statute of 1799, which declared them competent; and for the reason, that a jury could judge of the credit, to which they were entitled. But this will not apply, to jurors, as there is no tribunal provided to test their credit and consciences, but the established rules of law, which determine their qualifications.
It was urged in the argument, that if the Freeholders of a county cannot serve in the capacity of sheriff and jurors, in cases where their respective counties are interested, there will often times be a failure of justice. It is true, that the law of necessity is sometimes resorted to, to prevent the failure of justice ; as in criminal cases, where the fine imposed goes into the county or state treasury, or in actions upon recognizances, and perhaps in some other cases : there, notwithstanding the interest, the challenge will not prevail. But I find no such necessity to exist in this case, and it will be quite time enough to yield a safe and just, principle, when a case of clear and absolute necessity shall be presented. And even in such cases, it would perhaps be much better to resort to the legislature for aid, than to break down the principle by judicial discretion. The legislature have, in some instances, directed certain actions for penalties to be brought before the courts of a particular county, although the penalty recovered will go into the county treasury, for the use of the county. In Commonwealth v. Ryan, 5th Mass. R. 90, Chief Justice Parsons said, “there was no good reason, why the legislature might not constitutionally provide, that a remote and small corporate interest should not be a legal objection to a juror trying a cause, in which a fine may be imposed on a defendant, for the use of the commonwealth.”
*475 I am of opinion that the challenges to the array, and to the polls, in this case, were well taken ; and that the court erred in sustaining the demurrers to them, and for that cause the judgment should be reversed.
I deem it unnecessary to consider in detail, the other emus assigned j they are, in my opinion, not well assigned and ought not to be sustained.

Judgment affirmed.

Note. — This case was subsequently removed to the Court of Errors and Appeals, by writ of Error; and the judgment of the Supreme Court reversed, on the ground that the challenges to the judge, the array and the polls were well taken and should have been sustaiüed. Upon the other points, decided by the Supreme Court, no opinion was expressed by the appellate court.
Reversed, 1 Zab. 656.